# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

UNITED STATES OF AMERICA     )
                             )
     v.                       )       CAUSE NO.: 1:04-CR-17-TLS
                             )              1:07-CV-315-TLS
DAVID LEE REYNOLDS        )

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion Under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 146].


## PROCEDURAL BACKGROUND

On March 4, 2004, Defendant David Lee Reynolds and co-Defendant Abiodon O.

Bratton were charged by a Criminal Complaint [ECF No. 1]. On March 10, Attorney Nikos C.

Nakos entered an Appearance [ECF No. 17] on behalf of the Defendant in this matter. On March

24, the Defendant and co-Defendant Bratton were charged by a federal grand jury in an

Indictment [ECF No. 18] with one count of violating 21 U.S.C. § 841(a)(1) for possessing with

the intent to distribute 5 grams or more but less than 50 grams of cocaine base (commonly

known as "crack"), one count of violating 21 U.S.C. § 841(a)(1) for distributing less than 5

grams of crack cocaine, and one count of violating 18 U.S.C. § 924(c) for carrying a firearm

during and in relation to a drug trafficking crime.

On August 24, the Defendant by counsel filed a Motion to Suppress [ECF No. 58] the

transcript of the recorded conversation used by police in the course of the drug deal leading to

the Defendant's arrest. The Defendant asserted that the transcript was not sworn to as a true and

accurate copy of the conversations, that the tape recording received from the Government was of

poor quality, and that the transcript was not a true and accurate copy of the actual statements made. The Court issued a Memorandum of Decision and Order [ECF No. 60] denying the Defendant's Motion. The Court explained that transcripts are merely guides, that the jury would be instructed that the recording itself (not the transcript) is the evidence, that the Defendant could cross-examine the witnesses who testified as to the accuracy of the transcript, and that counsel for the Government and the Defendant could meet to agree to a satisfactory transcript or the Defendant could prepare a separate transcript for the jury.

On April 18, 2005, the Court entered an Opinion [ECF No. 66] granting the Government's Motion to Deny/Quash [ECF No. 64], in which the Government asked the Court to quash the Defendant's "Rule 34 Production of Documents and Things and Entry Upon Land for Inspection and Other Purposes." On May 17, the Defendant by counsel filed a Motion to Sever Defendant's Trial [ECF No. 71]. On June 22, co-Defendant Bratton pled guilty to Count 3 of the Indictment, which rendered moot the Defendant's Motion to Sever Defendant's Trial. On June 29, during the afternoon of the second day of trial, the jury returned guilty verdicts against the Defendant on all three counts of the Indictment. As to the firearm count, the jury specifically found that the Defendant had "used," "carried," and "brandished" the firearm. (Verdict Form No. 5, ECF No. 89 at 5.)

On August 24, the United States Probation Office prepared a Presentence Investigation Report (PSR). On September 8, Attorney Nakos filed a Motion to Withdraw [ECF No. 93], which the Court granted on September 19. Thus, Attorney Nakos represented the Defendant from his initial appearance/arraignment through the jury trial and into the sentencing phase. On September 26, Attorney Thomas C. Allen filed an Appearance [ECF No. 101] on the

Defendant's behalf. On April 19, 2006, the United States Probation Office revised the PSR. According to the PSR, the Defendant's total offense level on Counts 1 and 2 based on the 15.52 grams of crack was 26, and his Criminal History Category was II, yielding a corresponding guideline range of 70 to 87 months. With the conviction on the § 924(c) offense (the firearm offense), the Defendant faced a mandatory minimum sentence of 7 years, to run consecutive to the sentence on his drug offenses. On April 19, the Probation Office prepared an Addendum reflecting the Defendant's objections to the PSR. Attorney Allen submitted various objections to the PSR, which he detailed in a twelve-page document entitled Defendant's Objections and Corrections to the Presentence Investigation. The Probation Office grouped and addressed the various objections in the Addendum to the PSR. Attorney Allen objected to the paragraphs of the PSR that summarized the offense conduct, and he argued that these paragraphs should only reflect the jury's findings. He objected to the inclusion of .8 grams of crack cocaine in the total amount of 15.52 grams attributed to the Defendant, and he argued that the .8 grams was from co-Defendant Bratton's personal stash, which was intended for personal use only and not for distribution. Arguing that the jury did not specifically find that the Defendant "brandished" the firearm, Attorney Allen objected to the conclusion that a 7-year statutory mandatory minimum applied based upon his conviction of the firearm offense.

On May 2, 2006, the Court conducted a sentencing hearing. At the sentencing hearing, the Court confirmed with the parties that they had received the PSR and the Addendum. The Defendant confirmed that he had an opportunity to review the PSR and the Addendum and had adequate time to discuss them with his attorney prior to the hearing. The Court addressed and

overruled each objection raised by Attorney Allen.[1] Based on the Court's rulings, the Defendant's guideline range for Counts 1 and 2 was found to be 70 to 87 months, and a statutory mandatory minimum sentence of 7 years was determined to apply as to Count 3. The Defendant elected not to make a statement on his own behalf or to present evidence in mitigation of punishment. The Government argued for a sentence at the high end of the guideline range on Counts 1 and 2 because the Defendant had directed the undercover officer to put the crack cocaine in his mouth while spinning a gun on the table in front of him. The Court, having determined the advisory guideline range and considering the nature and circumstances of the offense, the history and characteristics of the Defendant, and the purposes of punishment, concluded that a sentence in the advisory guideline range was sufficient, but not greater than necessary, and sentenced the Defendant to serve 87 months of imprisonment on Count 1, 87 months of imprisonment on Count 2 (to be served concurrently with Count 1), and 7 years of imprisonment on Count 3 (to be served consecutively to the sentences on Counts 1 and 2).

On May 9, the Defendant filed a Notice of Appeal [ECF No. 126]. On June 9, the Seventh Circuit issued an Order [ECF No. 129] permitting Attorney Allen to withdraw and appointing Federal Community Defender Richard H. Parsons of Peoria, Illinois, to represent the Defendant on appeal. On November 14, the Defendant's counsel filed a Brief in Support of Motion to Withdraw as Defendant's Appointed Appellate Counsel Pursuant to *Anders v. California*, 386 U.S. 738 (1967) and Short Appendix. The Seventh Circuit gave the Defendant an

---

[1] As for the objection to the offense conduct paragraph, the Court, having presided over the trial, found that the content of the offense conduct paragraphs was supported by the evidence presented at trial. As to the .8 grams of crack cocaine, the Court overruled the objection because that small amount did not have any impact on the offense level and because the trial testimony supported a finding that the drugs were obtained by the co-Defendant for the Defendant. Attorney Allen withdrew the objection to the 7-year sentence based on the jury's specific finding that the Defendant "brandished" the weapon.

opportunity to raise any points he wished to show why his conviction should be set aside. On February 1, 2007, the Seventh Circuit entered an Order and a Judgment [ECF No. 145] granting appellate counsel's Motion to Withdraw and dismissing the Defendant's appeal. The Mandate [ECF No. 145] was issued on February 23.

On December 10, the Defendant filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 146] instituting this collateral proceeding under 28 U.S.C. § 2255. The Defendant also filed a Brief in Support [ECF No. 147] of his Motion, to which he attached several documents and copies of correspondence. On January 14, 2008, the Government filed a Response in Opposition [ECF No. 149], and on March 14, the Defendant filed a Reply [ECF No. 156], to which he attached a Sworn Declaration [ECF No. 156 at 15–16]. On April 8, the Court entered an Order [ECF No. 159] granting the Defendant's Petition for Reduction of Sentence Due to Amended Sentencing Guidelines [ECF No. 157] and reducing the Defendant's sentences as to Counts 1 and 2 to 71 months, which are to be served concurrently. The Defendant's sentence on Count 3 was not affected. On March 19, 2009, the Court issued an Opinion and Order [ECF No. 171] denying the Defendant's Motion for Re-Sentencing Hearing [ECF No. 160].

As to the Defendant's § 2255 Motion, the Court ordered additional briefing regarding new allegations raised by the Defendant in his Reply. On February 11, 2010, the Government filed a Sur-Reply [ECF No. 178], to which it attached a copy of the proposed plea agreement [ECF No. 178-1] offered to the Defendant and an Affidavit [ECF No. 178-2] of Attorney Nikos C. Nakos. On March 26, the Defendant filed a Sur-Response [ECF No. 181]. On April 14, the Defendant filed a "Judicial Notice Claim for Sentence Reduction Due to Split in Circuits" [ECF

No. 182], in response to which the Government filed an Opposition [ECF No. 185] on June 3. On July 8, the Court ordered the Government to supplement its Sur-Reply submission with copies of the two letters (and any other letters among the sixty-two referenced in the Nakos Affidavit) that are relevant to the proposed plea agreement and defense counsel's advice regarding accepting the plea offer or going to trial. On July 13, the Government filed a Supplement [ECF No. 187] to which are attached two letters [ECF No. 187-1 and 187-2] referenced in the Nakos Affidavit. On July 13, the Court ordered the Government to supplement its earlier submission of the proposed plea agreement with an affidavit (or affidavits) providing a proper factual basis for the document. On July 19, the Government filed a Supplement [ECF No. 190], to which is attached a July 16, 2010, Affidavit [ECF No. 190-1] of Nikos C. Nakos and a copy of the proposed plea agreement [ECF No. 190-2]. On July 23, the Defendant filed a Response to Government's Supplemental Petition [ECF No. 193].

## FACTUAL BACKGROUND[2]

On March 3, 2004, Fort Wayne Police Detective Fred Ray was working undercover with a confidential informant (CI). (June 28, 2005, Trial Tr. at 98–99.) The CI was to arrange for Detective Ray to purchase crack cocaine from two individuals dealing crack who went by the names "D.Ren" and "B.B." (*Id.* at 100–02.) A computer check revealed that "D.Ren" was David Reynolds, the Defendant, and that "B.B." was Abiodon Bratton, the co-Defendant. (*Id.* at 101–02.) Detective Ray and the CI drove to the co-Defendant's residence, but no one was home.

---

[2] This summation of the factual background is drawn primarily from the *Anders* Brief filed by the Defendant's appellate counsel in the Defendant's appeal before the United States Court of Appeals for the Seventh Circuit.

(*Id.* at 103.) The CI placed a telephone call and was told to wait there. (*Id.* at 103.) Later, the Defendant and the co-Defendant arrived at the co-Defendant's residence in a jeep that the Defendant was driving, and the co-Defendant got out of the jeep, approached the CI's car, and asked Detective Ray where he was from. (*Id.* at 104–05.) Detective Ray had met neither the Defendant nor the co-Defendant prior to this encounter. (*Id.* at 102–03.)

Shortly thereafter, the co-Defendant invited the CI and Detective Ray into his home. (*Id.* at 106.) Once inside, a discussion transpired regarding how Detective Ray knew the CI and whether he was aware that the CI had been arrested recently. (*Id.*) Detective Ray was unaware of this fact and became concerned that the Defendant suspected that he was a police officer. (*Id.* at 107.) The Defendant then asked Detective Ray if he minded removing his shirt. (*Id.*) Cognizant that he had no visible wires on his person and that the concealed listening device was disguised as an everyday object, Detective Ray complied, but he advised the Defendant that he was "strapped" or had a gun so that the Defendant would not feel threatened by his weapon. (*Id.*) The Defendant responded that he too was "strapped" and asked Detective Ray why he desired to purchase such a large quantity of crack cocaine. (*Id.* at 107–08.) Detective Ray replied that he just wanted to purchase a small amount to test the product's quality, and if it was good, he would purchase more later. (*Id.* at 108.)

The Defendant then removed his gun from his waistband, handed it to the co-Defendant, and walked out of the house through the front door. (*Id.*) Meanwhile, the co-Defendant left the room and returned with a small dinner plate containing what appeared to be crack cocaine. (*Id.* at 109.) The co-Defendant began cutting up the crack, and when the Defendant returned, the co-Defendant hid the plate underneath a phone book. (*Id.*) From his pocket, the Defendant then

produced two plastic sandwich bags that appeared to contain cocaine crack. (*Id.* at 109–10.) The Defendant gave one bag to the co-Defendant and kept one bag for himself. (*Id.* at 110.) Each of them gave Detective Ray crack cocaine from his individual bag. (*Id.*)

After Detective Ray paid $300 for the drugs and began discussing future transactions, the Defendant, who had his hand on the pistol that Detective Ray believed the co-Defendant had taken to another room, asked Detective Ray to place a piece of crack in his mouth. (*Id.* at 110–11.) As he made this request, the Defendant spun the gun from side to side on the table, without picking it up or pointing it at Detective Ray. (*Id.* at 110–13.) Detective Ray, knowing that his failure to comply with the Defendant's request would lead the Defendant to believe that he was a police officer (because police officers were prohibited from using drugs), gave the surveillance officers the distress signal to enter the residence, and the detective tried to delay placing the crack in his mouth. (*Id.* at 111–12.)

Unable to postpone any longer, Detective Ray eventually placed the crack on his tongue briefly and removed it. (*Id.* at 112.) He then asked the Defendant if that was good enough, but the Defendant responded that it was not and told him to place the crack back in his mouth and close it. (*Id.*) Detective Ray acquiesced, and shortly thereafter the surveillance officers entered the home, arrested the subjects, and found crack cocaine, the firearm, and the prerecorded drug money. (*Id.* at 112, 179–81, 185, 191, 214–18, & 231.) The Defendant was hiding in the bathroom, where some of the money was found floating in the toilet. (*Id.* at 181.) Special Agent Mickey Leadingham of the Bureau of Alcohol, Tobacco, Firearms and Explosives testified that the gun discovered at the home was functional and a "firearm under federal law." (*Id.* at 234.) The parties stipulated that a total of 15.52 grams of crack cocaine was discovered in the house.

(*Id.* at 231–32.) The entire episode was recorded, and a recording was played for the jury. (*Id.* at 145.)

The Defendant called the CI to testify on his behalf. (June 29, 2005, Trial Tr. at 10.) Initially, the CI testified that although the Defendant possessed a firearm, he did not possess or distribute narcotics or cocaine. (*Id.* at 11.) Later, he admitted that the Defendant did possess and distribute cocaine. (*Id.* at 18.) The CI also acknowledged that he had signed a prior statement that was inconsistent with his trial testimony implicating the Defendant. (*Id.* at 10–24.) The CI testified that this statement was prepared by Elaina White, an "associate" of the Defendant, who had approached him and asked him to sign it, and that he had signed it under threat or force. (*Id.* at 13, 22.) The Defendant also called Detective Ray to testify that the Defendant did not reside at the house where the drug transaction took place. (*Id.* at 30-31.)

## DISCUSSION

A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). "[R]elief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v.*

*United States,* 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation marks and citation omitted).

**A.     The Defendant's Section 2255 Motion**

In his Motion, the Defendant claims ineffective assistance of counsel as the only ground on which he claims that he is being held in violation of the Constitution, laws, or treaties of the United States. The Sixth Amendment to the Constitution of the United States accords criminal defendants the right to effective assistance of counsel. *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009). The standards governing ineffective assistance of counsel claims are well-established: "To succeed on a claim of ineffective assistance, [a defendant] must prove (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result." *Id.* at 457–58 (citing *Strickland v. Washington,* 466 U.S. 668, 687–88, 693 (1984)). As to the first prong, the performance prong, courts give great deference to counsel's judgment, recognizing that there is a wide range of reasonable defense strategies, and they analyze the reasonableness of counsel's performance in the context of the facts of the particular case. *Strickland*, 466 U.S. at 688–89. Consequently, a defendant "must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Wyatt*, 574 F.3d at 458 (citing *Strickland*, 466 U.S. at 689). A defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and the defendant must identify acts or omissions of counsel that were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 687, 690. As to the second prong, the prejudice prong, a defendant "must establish that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different.'" *Taylor v. Bradley,* 448 F.3d 942, 948 (7th Cir. 2006) (quoting *Strickland,* 466 U.S. at 694).

In his initial Brief in Support, the Defendant identifies a range of issues regarding the assistance provided by both his trial counsel and his sentencing counsel. He claims that trial counsel (Attorney Nakos) failed to investigate and refused to file a motion to suppress challenging the search conducted at a certain address on Roy Street on March 3, 2004; that trial counsel failed to depose the arresting officer and the CI and to seek additional discovery; that trial counsel failed to file a motion to suppress challenging the recording of the transaction, which in the Defendant's view was a search conducted without a warrant; that trial counsel failed to review "new evidence" involving the enhanced recording with the Defendant; that trial counsel failed to file a proper discovery motion; that trial counsel failed to use available witnesses; that trial counsel failed to timely file a motion for a new trial and an appeal; and that sentencing counsel (Attorney Thomas Allen) failed to raise various issues at sentencing.

The Defendant's Reply reflects a different approach to framing his ineffective assistance of counsel claim. In his Reply, the Defendant argues that his primary complaint is that Attorney Nakos did not "properly advis[e] the Defendant to negotiate a plea agreement and to dis[s]uade the [D]efendant from proceeding to trial in a case that offered no real line of defense." (Def.'s Reply 6, ECF No. 156.) He contends that the best strategy to pursue in his case was to take the best plea the Government offered and not to go to trial; that Attorney Nakos should have advised him that a plea agreement was the only chance that he had to lessen his sentencing exposure; that trial counsel failed to evaluate accurately the Defendant's case and the lack of a realistic defense to the charges and to assess correctly the amount of time the Defendant would face if he lost at

trial; and that he suffered prejudice in that losing at trial resulted in a greater sentence than he would have received pursuant to a plea agreement. In his Reply, the Defendant seems to backpedal some regarding issues he raised in his initial Brief in Support. For instance, he states in general terms that he "now realizes that some of the issues raised in his initial § 2255 [Brief] were inappropriate and were essentially incorrect" and that he "apologizes and begs the [C]ourt to understand that ineffectiveness exists in greater quantity on this side 'of the fence.'" (Def.'s Reply 2.) He also acknowledges that early in his criminal proceeding he sent, based upon advice by "jail-house lawyers," "motions to his attorney to file that were in fact not even lawful motions" and that "some of this same bad inmate lawyer advice crept into the initial § 2255 motion." (Def.'s Reply 6.) Although these statements suggest that the Defendant has reassessed the issues he presented in his initial Brief, the Defendant does not expressly withdraw any issues from consideration, and he does not specify which of the several issues he raised are now, in his view, incorrect.

In his Sur-Response, the Defendant again argues that his trial counsel failed to notify him that the Government had an enhanced tape, that this alleged failure affected his assessment of the strength of his case, and that without the enhanced tape "there was a reasonable calculation that a jury would not have a guilty finding beyond a reasonable doubt." (Def.'s Sur-Response 6, ECF No. 181.) The Defendant also contends that, after the jury had been selected, trial counsel informed him for the first time that there was an enhanced recording, that counsel should have sought a brief continuance, that the Government essentially "hid the tape" (Def.'s Sur-Response 4), and that this recording was a critical piece of evidence. Additionally, the Defendant asserts that defense counsel failed to establish that the Defendant never threatened Detective Ray with a

weapon.

The Court will address the various issues raised by the Defendant. The Court will begin by addressing the Defendant's request for an evidentiary hearing and then turn to the issues he has raised, starting with the recording of the drug transaction and the issue of going to trial as opposed to entering into a plea agreement.

1.      ***The Defendant's Hearing Request***

In addition to requesting that the Court vacate, set aside, or correct his sentence, the Defendant has requested an evidentiary hearing. A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Court finds that the Motion along with the files and records of this case conclusively show that the Defendant is entitled to no relief. Consequently, an evidentiary hearing is not warranted, and the Court denies his request.

2.      ***The Defendant's Arguments Regarding Suppression of the Audio Recording***

The Defendant contends that his trial counsel failed to file a motion to suppress challenging the recording of the drug transaction, which in the Defendant's view was an illegal search conducted without a warrant. In his Brief in Support, the Defendant references federal appellate court opinions and provisions of the federal wiretapping statute. The Defendant has submitted a copy of a June 15, 2004, letter his trial counsel sent him that explains that *Katz v. United States* applies only to situations in which a suspect has a reasonable expectation of privacy and not to situations in which a suspect voluntarily converses with a confidential

informant, that a recording of a conversation with a confidential informant is an exception to the

*Katz* rule, and thus that *Katz* did not support the filing of a motion to suppress the audio

recording in the Defendant's case. (ECF No. 147-2 at 7.) In his letter, trial counsel also cited

relevant authorities, explained that the relevant federal statute makes a specific exception to

allow body microphones on informants, and advised that case law did not support the filing of a

motion to suppress.

Generally speaking, police agents may not, consistent with the Fourth Amendment and

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.*,

gather evidence against a criminal defendant by surreptitiously intercepting a wire, oral, or

electronic communication to which a defendant is a party. *Katz v. United States*, 389 U.S. 347,

352 (1967) (holding that the Fourth Amendment protects against intrusion from the "uninvited

ear"); 18 U.S.C. § 2511(1)(a) (making it unlawful to "intentionally intercept[]," "endeavor[] to

intercept," or "procure[] any other person to use or endeavor to use any electronic, mechanical,

or other device to intercept" any wire, oral, or electronic communication). However, where one

of the parties to the communication consents to have the communication electronically

monitored, neither the Fourth Amendment nor Title III is offended. *United States v. White*, 401

U.S. 745, 751–52 (1970) ("If the law gives no protection to the wrongdoer whose trusted

accomplice is or becomes a police agent, neither should it protect him when that same agent has

recorded or transmitted the conversations which are later offered in evidence to prove the

[government's] case."); 18 U.S.C. § 2511(2)(c) (providing that it "shall not be unlawful . . . for a

person acting under color of law to intercept a wire, oral, or electronic communication, where

such person is a party to the communication or one of the parties to the communication has given

14

prior consent to such interception").

The Defendant does not dispute that Detective Ray and the CI were parties to the communications during the drug transaction that were recorded. The Court finds that the Defendant has failed to establish that his counsel's performance was deficient in not filing a motion to suppress the recording on the grounds argued by the Defendant. The Defendant has not shown that the recording unlawfully obtained, that a warrant was required to obtain the recording in these circumstances, or that, but for counsel's failure to file the motion to suppress, the result of the proceeding would have been different.

**3.** ***The Defendant's Argument Regarding Entering into a Plea Agreement Versus Going to Trial and the Enhanced Recording***

The Defendant has conceded that his underlying criminal case offered no realistic line of defense. In this collateral proceeding, he contends that trial counsel's performance was deficient because counsel failed to properly advise him to enter into a plea agreement and dissuade him from proceeding to trial. In support, the Defendant has submitted a Declaration in which he makes the following statements:

> 7.      At no time prior to proceeding to trial did I ever know or consider that I could receive a sentence of such length upon conviction by a jury.
>
> 8.      In deciding to proceed to trial, my Attorney, at no time[,] explained to me the fact that I had no credible defense and no real sound trial strategy.
>
> 9.      If at any time counsel would have broken down the severe deficiencies of my defense and the severity of my sentence exposure, I would have requested the negotiation[] of a plea to limit my exposure.
>
> 10.     I was always willing to entertain a reasonable plea but I never was led to understand I had no possible chance to win at trial.

(Def.'s Decl. ¶¶ 7–10, ECF No. 156.)

The Defendant also claims that trial counsel provided ineffective assistance by not making him aware of the existence of the enhanced recording before trial and by not convincing the Defendant to accept the plea offer based upon the existence of the enhanced recording. The Defendant characterizes the enhanced recording as "new evidence" that trial counsel failed to review with him. The Defendant conveys a view that he went into his trial thinking that a recording of lesser quality (and not an enhanced recording that minimizes background noise) would be admitted into evidence during the trial and that his assessment of the strength of his defense and the wisdom of accepting the Government's plea offer were affected by his belief that the recording of the drug transaction was of poor quality and that the Government would not come forward with an enhanced recording. The Defendant asserts that he learned for "the first time" "after the jury had been selected" that "there was an enhanced tape" and "that the legal strategy had to be changed" (Def.'s Sur-Resp. 3, ECF No. 181), but these assertions are presented as argument and not by way of a sworn statement. The Defendant has presented no evidence to support these assertions regarding when he learned about the enhanced recording.

The Defendant's characterization of the enhanced recording as "new evidence" is not on sound footing. The enhanced recording was not "new evidence." Rather, it was a duplicate of the evidence.[3] *See United States v. Beeler*, 62 F. Supp. 2d 136, 148 (D. Me. 1999) ("Rerecordings of videotapes by a mechanical or electronic objective devise that accurately reproduces the original

---

[3] Questions regarding the quality of the transcript and the content, authentication, quality, admission, and accuracy of the original or the enhanced recording are not matters to address in this proceeding. Nevertheless, it is worthwhile to note that Federal Rule of Evidence 1001(4) defines a "duplicate" as "a counterpart produced by the same impression as the original, or from the same matrix, . . . or by mechanical or electronic re-recording, . . . or by other equivalent techniques which accurately reproduces the original." Under Federal Rule of Evidence 1003, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

images on the tape are 'duplicates.' Furthermore, rerecordings that are enhanced so that the images are clearer to depict are also 'duplicates' so long as the tapes accurately reproduce the original images on the tape.") (citing *Fountain v. United States*, 384 F.2d 624, 631 (5th Cir. 1967)). From the record and the Defendant's submissions, it is clear that the Defendant knew well in advance of his trial that the Government had an audio recording of the drug transaction and that the Government might obtain and seek admission of an enhanced duplicate recording.[4] The Defendant also knew what was on the recording because he was present when the drug transaction occurred and participated in the conversations that were recorded. At the final pretrial conference conducted on Monday, June 20, 2005, counsel for the Government advised that it had sent the original recording to Sweetwater Sound to have some of the background noise taken out and that it intended to present the original recording, an enhanced duplicate recording, and a shorter edited recording that removed portions that recorded irrelevant matters. The Court inquired of counsel for the Defendant whether the Defendant would request that the whole recording be played, and the Defendant's counsel provided the following answer:

> Judge, I have discussed that, and I informed Mr. Reynolds over the weekend of that plan to have an enhanced tape or whatever—whatever I call it—an enhanced

---

[4] The Defendant's Brief in Support states that he received copies of an August 16, 2004, letter and a March 7, 2005, letter between his counsel and his co-Defendant's attorney discussing the transcript and an enhanced tape. In the August 16, 2004, letter, trial counsel proposes filing a motion to suppress the transcript as inaccurate and indicates that he would "immediately contact" the co-Defendant's counsel if the Government responds to a separate letter "by providing an enhanced tape." (ECF No. 147-2 at 11.) In the March 7, 2005, letter, trial counsel expresses that "[t]here is no possible way that the tape that I have can even be transcribed." (ECF No. 181 at 11.) The letters indicate that carbon copies were sent to the Defendant. The Defendant has also submitted the following letters: an April 22, 2004, letter from trial counsel to the Defendant in which counsel advised that he was setting up with the Government and the United States Marshals Service a session for the Defendant to listen to the tape recording (ECF No. 181 at 9); an April 27, 2004, letter from trial counsel to the commander of the Allen County Jail (with carbon copy to the Defendant) making arrangements for the Defendant to listen to the recording (ECF No. 181 at 10); and a June 6, 2005, letter from trial counsel to counsel for the Government (with carbon copy to the Defendant) requesting "the better audio tape that [she] might have" (ECF No. 181 at 12).

tape, meaning they were going to take some of the background sounds away or attempt to do so. Of course, I think my client, knowing David, he's probably going to want the whole tape played. I'll just be[] honest with the Court.

(June 20, 2005, Tr. 5.) The Defendant's trial began eight days later on Tuesday, June 28. During the trial, Detective Ray testified regarding the drug transaction and provided foundation testimony regarding the recordings.[5] The Defendant's trial counsel contested the admission of the recordings and the transcripts, but the recordings were admitted into evidence for the jury to consider along with other evidence of the Defendant's guilt.[6] *See White,* 401 U.S. at 753 ("An

---

[5] Detective Ray provided foundation testimony regarding the Government's Exhibit 1 (the cassette tape containing a recording of the transaction) including testimony that the tape had not been altered or edited in any way, that he could decipher the voices on the tape, and that he made a transcript of the recording. Detective Ray also provided foundation testimony regarding the Government's Exhibit1-1 (the enhanced recording of the transaction) including testimony that he listened to Exhibit 1-1, that Exhibit 1-1 accurately depicts the same conversation as recorded in Exhibit 1, and that Exhibit 1-1 is a little clearer than Exhibit 1.

[6] Although the Defendant's trial counsel had determined that legal authority was lacking to file a motion to suppress claiming a violation of the Fourth Amendment or 18 U.S.C. § 2511(1), he did file a Motion to Suppress [ECF No. 58] well before the trial seeking the suppression of the transcript of the recording, arguing that the tape is not a quality tape, that the transcript was not a true and accurate copy of the statements made, and that jurors would be misled. The Court denied the Defendant's Motion, explaining that transcripts are merely guides, that the jury would be instructed that the recording itself (and not the transcript) is the evidence, that the Defendant could cross-examine the witnesses who testified as to the accuracy of the transcript, and that counsel for the Government and the Defendant could agree to a satisfactory transcript or the Defendant could prepare a separate transcript for the jury. At the conclusion of the Defendant's trial, the Court gave the following final instruction to the jury regarding the recording and the transcripts:

You have heard recorded conversations. These recorded conversations are proper evidence and you may consider them, just as any other evidence.

When the recordings were played during the trial, you were furnished transcripts of the recorded conversation prepared by government agents.

The recordings are the evidence, and the transcripts were provided to you only as a guide to help you follow as you listen to the recordings. The transcripts are not evidence of what was actually said or who said it. It is up to you to decide whether the transcripts correctly reflect what was said and who said it. If you noticed any difference between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. And if after careful listening, you could not hear or understand certain parts of the recordings, you must ignore the transcripts as far as those parts are concerned.

(Court's Final Jury Instruction No. 15, ECF No. 88.) This instruction is based upon the Seventh Circuit's

electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent."); *Lopez v. United States*, 373 U.S. 427, 439 (1963) (approving the use of recorded conversations by government agent as "the most reliable evidence possible").

As to the performance prong, the Seventh Circuit has held that "counsel's performance may fall below the minimum threshold if he advises his client to reject a plea bargain in the face of overwhelming evidence of guilt and an absence of viable defenses." *Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir. 2005) (citing *Toro v. Fairman,* 940 F.2d 1065, 1068 (7th Cir. 1991)). Additionally, the Seventh Circuit has observed:

> [I]n the ordinary case criminal defense attorneys have a duty to inform their clients of plea agreements proffered by the prosecution, and that failure to do so constitutes ineffective assistance of counsel under the sixth and fourteenth amendments. Apart from merely being informed about the proffered agreement, we also believe that a defendant must be involved in the decision-making process regarding the agreement's ultimate acceptance or rejection.

*Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir. 1986); *see also United States v. Golden*, 102 F.3d 936, 943 (7th Cir. 1996).

The Defendant makes no allegation and has presented no evidence that his trial counsel advised him to reject the proffered agreement. The record before the Court shows that trial counsel informed the Defendant of the plea agreement proffered by the Government, that the Defendant was involved in the decision-making process, and that the Defendant ultimately rejected the Government's proffered agreement. In particular, two letters from trial counsel to the Defendant show the Defendant's awareness of the proffered agreement and his participation

---

Pattern Criminal Jury Instruction 3.18. *See United States v. Jordan*, 223 F.3d 676, 689 & n.10 (7th Cir. 2000).

in the decision-making process. One is a copy of a letter dated May 3, 2004, that states:

> Pursuant to our meeting of May 1, 2004, I am writing to confirm that you do wish to go to trial. Please note that this is in my opinion, against your best interest. However, that decision is yours. I believe that the Plea Recommendation that I worked out for you was in your best interest. In fact, if you are found Guilty, you will receive more time tha[n] under the Plea Recommendation.

(ECF No. 187-1.) The other is a copy of a June 20, 2005, letter that reads as follows:

> Pursuant to our meeting of June 18, 2005, I am writing to confirm that you do not wish to plead guilty to Possession of a Firearm and receive a seven (7) year sentence. We discussed that option thoroughly. You realize that if we proceed to Trial and you are convicted, then you could face a more substantial amount of time.
> I respect your decision. However, I must confirm in writing that you do not wish to accept the previously stated offer.

(ECF No. 147-2 at 12; ECF No. 187-2.) These letters demonstrate that the Defendant's trial counsel advised the Defendant that he would face a lengthier sentence if he went to trial instead of accepting the proffered agreement. Additionally, at the Monday, June 20, 2005, final pretrial conference, defense counsel advised that counsel for the Government "had tendered a plea agreement. I discussed it with Mr. Reynolds on Saturday at the Allen County confinement facility. He's rejected it, and I sent a follow-up letter today." (June 20, 2005, Tr. 11.) Accordingly, the Defendant has failed to show that his trial counsel advised him to reject the plea offer in the face of overwhelming evidence of guilty and an absence of viable defenses and thereby provided assistance that fell below the minimum performance threshold.[7] The Defendant

---

[7] The Court also has before it the Affidavit of Attorney Nakos, which indicates that trial counsel and the Defendant thoroughly discussed the defense, that trial counsel advised the Defendant that he was not likely to prevail on his defense, that trial counsel disagreed with his decision to go to trial, that trial counsel tendered to the Defendant the proffered plea agreement and recommended that he accept the Government's offer, and that it was the Defendant's "sole decision to go to trial despite his counsel's advice." (Nakos Aff. ¶¶ 4, 5, & 10, ECF No. 178-2.) In his Sur-Response, the Defendant does not dispute these facts; rather, he appears to concede their accuracy:

> The affidavit [of Attorney Nakos] was an example of stating facts while omitting

has also not shown that his counsel failed to inform him of the proffered plea agreement or involve him in the decision-making process to accept or reject the offer.

As for the prejudice prong, when a defendant has rejected an offer to plead guilty, the prejudice prong analysis "focuses on whether the deficient information was the decisive factor in a defendant's decision to plead guilty or to proceed to trial." *Julian v. Bartley,* 495 F.3d 487, 498 (7th Cir. 2007). "In this context, prejudice means 'a reasonable probability that, absent counsel's inadequate performance, [the defendant] would have accepted the government's offer.'" *Gallo-Vasquez*, 402 F.3d at 798 (quoting *Paters v. United States*, 159 F.3d 1043, 1047 (7th Cir. 1998)).

The Defendant relies upon statements in his own Declaration to establish prejudice, but the Seventh Circuit has observed that solitary pieces of evidence (e.g., "a naked declaration that but for the erroneous advice, the defendant would have altered his choice to take a plea or go to trial," "a third party affidavit stating the same," or "after-the-fact evidence") are insufficient to prove prejudice. *Julian v. Bartley*, 495 F.3d 487, 499–500 (7th Cir. 2007) (citing *Toro*, 940 F.2d at 1068 (explaining that a self-serving statement that the defendant would have accepted the plea was insufficient to demonstrate prejudice); *Paters v. United States*, 159 F.3d 1043, 1047 (7th

---

vital information.

      Of course it is obvious that by going to trial and losing there would be a longer sentence imposed rather than accepting a plea agreement. It is a va[li]d assumption that all defense attorneys inform their clients of this fact. If nothing else, by accepting responsibility and saving the Court time for a trial, the defendant gets less of a sentence.

      However, that is not the issue here. Without an enhanced tape, there was a reasonable calculation that a jury would not have a guilty finding beyond a reasonable doubt.

      Without co-defendant's testimony, the weapon fabrication by the under cover officer was left unchallenged because of defense counsel's ineffective cross examination. Defense counsel could have developed an argument that the jury could have believed the under cover officer's tale only after a finding that [the Defendant] was a sorcerer.

(Def.'s Sur-Resp. 6, ECF No. 181.)

Cir. 1998) (noting that an affidavit by defendant's parents stating that he would have rejected the plea was, by itself, insufficient evidence of prejudice, but remanding for evidentiary hearing because the government had also conceded certain facts); *Johnson v. Duckworth*, 793 F.2d 898, 902 n.3 (7th Cir. 1986) (casting doubt, in footnote dicta, on after-the-fact testimony by the defendant that he would have taken a plea)); *cf. Bethel v. United States*, 458 F.3d 711, 718 (7th Cir. 2006) (stating that "a mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice") (citing cases). Consequently, the Defendant's self-serving statements to the effect that he would have been receptive to a plea agreement are insufficient to show prejudice and to establish that he would have accepted a plea if counsel's performance had been different.

Furthermore, statements in the Defendant's Declaration are disputed by the record in this case and the Defendant's own submissions. Regarding his claim that he was not advised of sentence length and exposure, the Defendant was informed multiple times regarding the penalties he faced.[8] Additionally, as noted above, trial counsel in his June 20, 2005, letter to the Defendant

---

[8] As the Government notes, an Affidavit [ECF No. 1 at 2–6] summarizing the Government's evidence and the factual basis for the charges and a Notice of Penalties [ECF No. 3] were filed with the Complaint [ECF No. 1], and the Defendant had an initial appearance [ECF No. 10] and detention hearing [ECF No. 14] before Magistrate Judge Roger B. Cosbey. Likewise, the Government notes that a Notice of Penalties [ECF No. 22] was filed with the Indictment [ECF No. 18], and the Defendant was arraigned and entered a plea of not guilty [ECF No. 26] before Magistrate Judge Cosbey. These Notices advised that the Defendant faced the following terms of imprisonment if convicted: if convicted of Count 1, a sentence of not less than five years and not more than forty years in prison; if convicted of Count 2, a sentence of not more than twenty years in prison; and if convicted of Count 3, a sentence of not less than seven years if the firearm was brandished or not less than five years if the firearm was used but not brandished, which term of imprisonment is to run consecutively to any term of imprisonment imposed on the drug charge in which the firearm was used/carried. An Amended Notice of Penalties [ECF No. 65] was filed as to Count 3, advising that, if convicted of Count 3, the Defendant would face a sentence of not less than seven years if the firearm was brandished or not less than five years if the firearm was used but not brandished and not more than life imprisonment, which term of imprisonment is to run consecutively to any term of imprisonment imposed on the drug charge in which the firearm was used/carried.

sought to confirm that the Defendant did not wish to accept the Government's plea offer, plead guilty to the firearm offense, and receive a seven year sentence on that offense, and trial counsel advised the Defendant that he "could face a more substantial amount of time" if he went to trial and was convicted. (DE 147-2 at 12; ECF No. 187-2.) This letter demonstrates that the Defendant's trial counsel did in fact advise the Defendant that if he did not accept the plea offer and plead guilty but instead proceeded to trial, he was exposing himself to the potential of a substantially higher sentence.[9] (Proposed Plea Agreement, DE 178-1.) The Defendant's statement in his Declaration that he "was always willing to entertain a reasonable plea" is undercut by the evidence in the record that the Defendant rejected a proposed plea agreement.

Although the Defendant claims that trial counsel's ineffective assistance in failing to communicate the status of the enhanced duplicate recording "was the cause for [him] not making a knowing and willing assessment to accept a plea agreement" (Def.'s Sur-Resp, 1, DE 181), he has not shown that this was the "decisive" factor in his decision to go to trial. Rather, it appears from the Defendant's submissions that one of the principal decisive factors in his decision to go to trial was the advice he received from others with whom he was incarcerated. The Defendant admits that "the Defendant himself was being swayed by the ever present 'jail-house lawyers'

---

[9] This advice is consistent with the proposed plea agreement offered to the Defendant. The proposed agreement included the following relevant terms: the Defendant would agree to plead guilty to Counts 2 and 3; the Government would agree to dismiss Count 1; the Defendant understood that the term of imprisonment on Count 2 was not more than twenty years, that the term of imprisonment on Count 3 was not less than seven years because the firearm was brandished, and that the term of imprisonment on Count 3 was a mandatory minimum term that would run consecutive to the term of imprisonment for Count 2. Along with his Sur-Response, the Defendant submitted a June 6, 2005, letter from his trial counsel to counsel for the Government (with carbon copy to the Defendant) requesting a copy of the plea agreement between the Government and co-Defendant Bratton (ECF No. 181 at 12), and thus the Defendant was aware that his co-Defendant had likely entered into an agreement with the Government to plead guilty.

that often convince a pre-trial detainee that trials are easy to win and Defendants should not let their 'evil' lawyers talk them into pleading guilty."[10] (Def.'s Reply 6, ECF No. 156.) The Defendant acknowledges that "there was an element of this in the early days of the proceedings when the Defendant was sending motions to his attorney to file that were in fact not even lawful motions; regretfully some of this same bad inmate lawyer advice crept into the initial § 2255 motion." (*Id.*) He also adds that he "himself may well have shared in the responsibility to the extent that he was being fed bad 'legal advi[c]e ' from those incarcerated around him." (*Id.* at 8.) Consistent with this, the Defendant argues that his counsel failed to "dis[s]uade" him "from proceeding to trial," (*id.* at 6), a course of action that he had apparently resolved to follow based upon the advice of these jailhouse lawyers. Although he concedes his reliance on the advice of these jailhouse lawyers to reject an offer to plead guilty and go to trial, he nevertheless asserts that his "counsel was obligated to spend as much time and energy as would be required to make his client understand [that] this trial would be judicial suicide." (*Id.* at 10.) The Defendant's admissions in his Reply provide a perspective that contradicts the statements he presents in his Declaration. Additionally, the Defendant's contention that not knowing of the enhanced recording was the decisive factor in his decision to go to trial and reject the proposed plea agreement is undercut by his knowledge of the evidence in his case. This evidence included several police officers testifying to what they found when they entered co-Defendant Bratton's

---

[10] He also states that he "has fallen prey to certain 'jailhouse' lawyers who mis-quote, mis-lead and ultimately do more harm than good" (Def.'s Reply 2), and that "[t]here is no dispute that the Defendant received some bad advice from others not his counsel" (*id.* at 12). He later adds that, "[w]hile the Defendant was misled to believe he had a winable case, there was no excuse for his attorney." (*Id.* at 7.) Furthermore, he comments that "[t]here is no question that nearly every defendant harbors a certain hope that he can beat his case; everyone would like to win and when there is a chance often a trial is the best strategy." (*Id.* at 10.)

residence while he and the Defendant, who was in possession of a firearm, were engaged in a drug transaction with a confidential informant and an undercover detective and officers finding the Defendant in the bathroom with buy money floating in the toilet.

Even if the Defendant could demonstrate that his lawyer's conduct was constitutionally deficient, which he has not done, the Court finds that he has failed to show that absent counsel's inadequate performance he would have accepted the Government's offer. The record in this case and the Defendant's submissions show that the Defendant was advised of the penalties that he faced if convicted of the charged offenses, that the Defendant's trial counsel made him aware that he faced a substantially longer sentence if he proceeded to trial and was convicted, that he was aware of the extent of the Government's case against him, that a recording of the drug transaction was available, that he rejected his lawyer's advice, and that he decided to take his chances at trial, perhaps relying to his own detriment (as he suggests) upon the advice of jail-house lawyers. The Defendant proceeded to trial denying his guilt, challenging the Government's evidence, presenting a defense, and calling the CI and Detective Ray to testify. The evidence of the Defendant's guilt in this case was not limited to the recording or the enhanced duplicate recording. As mentioned above, the Government called Detective Ray to testify about the facts leading up to and during the drug transaction. The Government also called several witnesses who presented evidence that established the Defendant's guilt. These witnesses included the following Fort Wayne police officers who were involved in the surveillance of the undercover drug buy and entered the Roy Street residence: Justin Henry, who found the Defendant in the bathroom with money floating in the toilet; Christopher Furge, who found a handgun in plain view in the dining room area; Robert Kirby, who found crack cocaine; Craig

Wise, who discovered crack cocaine and ammunition in the basement and testified that the amount of crack cocaine recovered was consistent with distribution use, not consumption; and Kimberly Seiss, who saw currency in the toilet where the Defendant was found and additional money on the dining room table and testified regarding the crack cocaine found in the residence. The Government's evidence apart from the recording of the drug transaction (whether the original or the enhanced version) was sufficient to convict the Defendant.

The Court finds that the Defendant has failed to establish that his counsel's performance was deficient in not reviewing with him the enhanced version of the recording that was admitted into evidence at trial and not using that enhanced recording to persuade the Defendant to accept the plea agreement that had been offered but rejected by the Defendant against counsel's advice. The Defendant has also failed to establish that the result of the proceeding would have been different had trial counsel reviewed the enhanced recording with him.

**4.** ***The Defendant's Argument Regarding Suppression of the Roy Street Address Search***

The Defendant contends that his trial counsel failed to investigate and refused to file a draft motion to suppress provided by the Defendant challenging the search conducted at a certain address on Roy Street on March 3, 2004. He claims that he had a temporary residential arrangement at the house. He asserts that his attorney's performance fell below the applicable standard by failing to investigate this alleged Fourth Amendment violation. In support, he has submitted a copy of a September 2004 letter to his attorney referencing the proposed motion to suppress and asking that it be filed. (ECF No. 147-2 at 1.) He has also provided a copy of defense counsel's October 14, 2004, letter in response, which indicates that counsel reviewed the

proposed motion and concluded that he could not file the document. The letter states that the only individual who has standing to file the motion is someone who resided at the home that was searched and that "[t]he facts are undisputed that you did not reside at the Bratton home." (ECF No. 147-2 at 2.) Defense counsel also explained that the co-Defendant's counsel was investigating filing a motion to suppress evidence from the search at the co-Defendant's residence and that such a motion, if filed, would likely benefit the Defendant. (ECF No. 147-2 at 2.) The Defendant has provided a copy of an October 16, 2004, letter to defense counsel in which the Defendant asserts that he has standing and claims that his constitutional rights were violated. (ECF No. 147-2 at 3.)

Fourth Amendment jurisprudence on this issue is well-settled. To challenge the admission of illegally obtained evidence, "the defendant must have a legitimate expectation of privacy in the premises before he can claim protection in the Fourth Amendment." *United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006) (citing *Rakas v. Ill.*, 439 U.S. 128, 143 (1978)); *see also Minnesota v. Carter*, 525 U.S. 83, 88, 91 (1988). Suppression of the "fruits of a Fourth Amendment violation may be urged only by those whose rights were infringed by the search itself and not by those aggrieved solely by the introduction of incriminating evidence." *Zurcher v. Stanford Daily*, 436 U.S. 547, 562 n.9 (1970) (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)). "[A] defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993) (citing *Alderman*, 394 U.S. at 171–72.)

Perhaps this is one of those issues identified in the Defendant's Reply that he now

believes was inappropriate and incorrect. His assertion that he had a temporary residential arrangement in the house is contradicted by evidence he has submitted indicating that it was undisputed that he did not reside at the house. Furthermore, defense counsel's October 14, 2004, letter shows that counsel did investigate the matter and concluded that the challenge to the search was meritless because the Defendant did not have standing to challenge the search of the house. At trial, the Defendant called Detective Ray who testified that his report identified the Roy Street residence as the residence of co-Defendant Bratton, that he did not believe the Defendant resided at that address, and that the report indicates that the Defendant resided at a Lombard Street address. Additionally, the approach the Defendant pursued at trial also undercuts his current claim—at trial he sought to distance himself from any interest in or connection to the Roy Street residence and the drugs discovered there. The Defendant has offered no evidence showing that he actually had any legitimate expectation of privacy in the Roy Street premises. The Court finds that the Defendant has failed to establish that his counsel's performance was deficient in his refusal to challenge the search of the Roy Street residence.

5.     ***The Defendant's Argument Regarding Depositions and Discovery***

The Defendant contends that trial counsel provided ineffective assistance by failing to depose the arresting officer and the CI, to investigate, and to seek additional discovery. The Defendant has submitted a copy of an undated letter he sent to defense counsel asking that they meet to put their thoughts together about deposing the arresting officer and the CI. (ECF No. 147-2 at 4.) He has provided a copy of a notarized but unsworn November 10, 2004, statement by the CI that the Defendant did not possess or flash a stolen handgun and did not possess or

distribute narcotics.[11] (ECF No. 147-2 at 6.) He has also submitted a copy of defense counsel's November 19, 2004, letter to the Defendant that states that federal criminal discovery procedure does not permit the deposition of police officers. (ECF No. 147-2 at 5.) Additionally, he has submitted a copy of a March 7, 2005, letter from trial counsel to the Defendant indicating that he was enclosing a copy of the Rule 34 production request and that he was seeking background information regarding Detective Ray's academy records to see if there was any information about substance abuse. (ECF No. 147-2 at 14.)

On April 18, 2005, the Court granted the Government's Motion to Deny/Quash, in which the Government asked the Court to quash the Defendant's "Rule 34 Production of Documents and Things and Entry Upon Land for Inspection and Other Purposes" (ECF No. 64-2), which sought a full copy of Detective Ray's academy record. The Court explained that the use of Federal Rule of Civil Procedure 34 is improper in federal criminal cases, in which Federal Rule of Criminal Procedure 16 governs discovery, and that the Defendant's discovery request was not for an item enumerated in Rule 16. The Court observed that the Government has obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) (evidence favorable to the accused where the evidence is material either to guilt or punishment), and *Giglio v. United States*, 405 U.S. 150 (1972) (any material evidence that might undermine the reliability of a government witness), to disclose prior to trial impeaching evidence and evidence favorable to the Defendant. In looking

---

[11] During the trial, the CI testified that the CI's statement was prepared by Elaina White, that Elaina White asked the CI to sign it and proposed having it notarized, that the CI met Elaina White through the Defendant, that the CI signed it and was under some fear of threat or force when he signed it, that Elaina White's sister was present when he signed it, and that Elaina White is related to Ashley White, who was the Defendant's girlfriend at the time. The CI also testified that he was mistaken about facts when he signed the statement, that the Defendant did have a gun, and that he had given a prior oral statement to the Government that the Defendant and co-Defendant Bratton had split the crack cocaine in order to sell it to Detective Ray.

back on this discovery-related conduct, the Defendant argues that trial counsel's discovery request was "an exceptionally flawed motion" and a "frivolous attempt to paci[f]y client." (Def.'s Br. in Supp. 7.)

Federal Rule of Criminal Procedure 15 limits the taking and the use of depositions in federal criminal matters. Rule 15(a)(1) permits depositions to "preserve testimony for trial," and a court may grant a motion "because of exceptional circumstances and in the interest of justice." As the Court noted in its April 18, 2005, Opinion, the discovery of information in federal criminal cases is governed by Federal Rule of Criminal Procedure 16 and the relevant statutes and case law. Perhaps this is another issue that the Defendant now believes was inappropriate and incorrect for him to insist on with his counsel and to present in his § 2255 Motion. The Defendant has not shown any legitimate basis (e.g., any exceptional circumstances warranting taking depositions to preserve the testimony of the arresting officer and the CI for trial) for taking depositions under Rule 15. The Court notes that the Defendant called Detective Ray and the CI to testify in his case-in-chief.

The Defendant has not explained how or in what manner his trial counsel failed to investigate the case or provided sufficiently precise information regarding what the investigation would have produced. *See Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) ("When the alleged deficiency is a failure to investigate, the movant must provide 'the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.'" (quoting *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003)). The Defendant asserts that additional discovery would have shown who wore the wire, but the Defendant's guilt in this case did not turn on evidence regarding whether Detective Ray

or the CI wore the wire or whether the wire was disguised in an everyday object. Furthermore, the Defendant has not argued or shown that trial counsel failed to obtain the available discovery materials by appropriate means under the rules. The Defendant may be correct that his discovery request represented an effort by his counsel to pacify or appease the Defendant that he was acting on the Defendant's behalf, but that does not establish constitutionally deficient performance or prejudice. For these reasons, the Court finds that the Defendant has failed to establish that his counsel's performance was deficient in refusing to take depositions of the arresting officer and the CI, in investigating the case, and in seeking additional discovery, and that he has failed to show that, but for counsel's performance, the result of his proceeding would have been different.

6.      ***The Defendant's Argument Regarding Available Witnesses***

The Defendant argues that trial counsel provided ineffective assistance by failing to interview and subpoena co-Defendant Bratton and by failing to use "vital information" gathered by a private investigator. (Def.'s Br. in Supp. 7.) The Defendant has offered no evidence in support of these claims and has not sufficiently identified what information additional investigation would have produced, what favorable evidence co-Defendant Bratton would have provided the Defendant, what the "vital information" was that the investigator had, or how any of this information or evidence would have helped his case. *See United States v. Farr*, 297 F.3d 651, 658–59 (7th Cir. 2002) (instructing that a defendant who claims that defense counsel's performance was deficient for failing to track down and interview witnesses must present sufficiently precise information as to the nature and probable effect of the evidence that would

have been obtained had counsel undertaken the desired investigation). The materials submitted by the Defendant show that his trial counsel had ongoing contact with counsel for co-Defendant Bratton. The record in this case shows that co-Defendant Bratton entered into a Plea Agreement with the Government that included an acceptance of responsibility term and a stipulation that his conduct involved brandishing the firearm; that the co-Defendant pleaded guilty to Count 3 as he agreed; and that he was awaiting sentencing when the Defendant went to trial.[12] Co-Defendant Bratton's Plea Agreement did not contain any term requiring the co-Defendant testify at the Defendant's trial. The Seventh Circuit has observed that "'[a] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review. The Constitution does not oblige counsel to present each and every witness that is suggested to him.'" *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005) (quoting *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997)). Accordingly, the Court finds that the Defendant has failed to establish that his counsel's performance was deficient in failing to interview and subpoena co-Defendant Bratton and in failing to use purportedly "vital information" gathered by a private investigator, and that he has failed to show that, but for counsel's performance, the result of his proceeding would have been different.

**7.      *The Defendant's Argument Regarding the Weapon***

In his Sur-Response, the Defendant argues that trial counsel failed to establish that the Defendant did not threaten Detective Ray with a weapon. He contends that he never had the

---

[12] The Court conducted co-Defendant Bratton's change of plea hearing on June 22, 2005, and the Defendant's jury trial began on June 28, 2005.

weapon at the table and never twirled or spun the weapon. Accordingly, he claims that trial counsel was ineffective for not engaging in effective cross-examination as to how the detective saw the weapon leaving the room but "magically appear[] at the table." (Def.'s Sur-Resp. 5, ECF No. 181.) He adds that he "was never charged or found guilty of alchemy or prestidigitation. There is a gap in the trial record which logically cannot be explained by the under cover officer's exaggerated version of events. If he felt threatened, why was he swearing at [the Defendant]? [The Defendant's] voice was calm and subdued." (*Id.* at 6.)

The Defendant offers no evidence in support of this claim, but suggests that co-Defendant Bratton would testify at an evidentiary hearing that the Defendant gave him the weapon. Additionally, at trial, defense counsel cross-examined witnesses on weapon-related testimony, and the jury made a specific finding based upon the evidence presented that the Defendant used, carried, and brandished the firearm. The Defendant has failed to establish deficient performance or prejudice on this issue.

**8.**      *The Defendant's Argument Regarding a Motion for New Trial and the Appeal*

The Defendant argues that his trial counsel provided ineffective assistance by failing to seek a new trial on the ground that the Defendant's Fourth Amendment rights were violated by Detective Ray wearing a wire transmitter without a warrant and by failing to institute a timely appeal. The record before the Court is that on September 12, 2005, the Defendant filed a pro se "Motion to Overturn Conviction" [ECF No. 96]. The Defendant argued that the search and the recording were unlawful under the Fourth Amendment and the federal wiretapping statute, that the evidence of the recording should have been excluded, and that the Defendant has standing to

challenge the search of the Roy Street address. On February 3, 2006, the Court ordered that "Motion" stricken [ECF No. 117] because the Defendant was represented by counsel.

As noted earlier in this Opinion and Order, the Defendant's argument has no legal merit. The Defendant has not shown any legitimate ground that would have warranted trial counsel seeking a new trial. Additionally, Attorney Allen, the Defendant's sentencing counsel, filed a timely Notice of Appeal [ECF No. 126] on May 9, 2006. His appellate counsel moved to withdraw because he could not discern a nonfrivolous basis for the appeal, citing *Anders v. California*, 386 U.S. 738 (1967). The Defendant was afforded an opportunity to respond to his appellate counsel's motion, but he did not do so. For these reasons, the Court finds that the Defendant has failed to establish that the performance of his trial counsel and his sentencing counsel was deficient in failing to seek a new trial and in failing to file a timely appeal, and that he has failed to show that, but for counsel's performance, the result of his proceeding would have been different.

**9.**     *The Defendant's Argument Regarding Sentencing Objections*

The Defendant argues that his counsel at sentencing failed to argue any mitigating factors and to present arguments regarding the Defendant's "very slight criminal history," his age at the time of the offense (twenty-one years old), the "relatively small amount of crack cocaine" (15.52 grams), and the disparity between crack and powder cocaine in sentencing. (Def.'s Br. in Supp. 10–11.) He also contends that sentencing counsel did not counter the Government's argument for a high-end guideline sentence and that the Defendant was essentially denied counsel at sentencing because of counsel's ineffectiveness.

In advance of the sentencing hearing, defense counsel responded to the PSR prepared by the Probation Officer, which is reflected in the Addendum to the PSR, and submitted a twelve-page document objecting to and correcting the PSR. The objections presented in this document address issues in a considerable number of paragraphs and several sections of the PSR. Defense counsel objected to the paragraphs of the PSR that summarized the offense conduct and argued that these paragraphs should only reflect the jury's findings. He objected to .8 grams of crack cocaine that was included in the total amount of 15.52 grams attributed to the Defendant and argued that the .8 grams was from co-Defendant Bratton's personal stash, which was intended for personal use only and not for distribution. Arguing that the jury did not specifically find that the Defendant "brandished" the firearm, Attorney Allen objected to the conclusion that a seven-year statutory mandatory minimum applied based upon his conviction of the § 924(c) firearm offense. In his twelve-page submission, sentencing counsel highlighted the Defendant's age at the time of sentencing and took issue with the amount of drugs calculated in the report, although defense counsel did not argue that the overall amount was slight. At sentencing, the Government asked the Court to impose a sentence at the high end of the guideline range for Counts 1 and 2 and a mandatory consecutive seven-year minimum sentence on Count 3 because the Defendant had asked Detective Ray to remove his shirt, had told the detective to put crack cocaine in his mouth, and brandished a weapon during the transaction.

It is also worthy to note that the Court, in addition to imposing the Defendant's sentence, presided over the Defendant's trial and heard the evidence presented in the case. The Defendant's age was noted in the PSR. The Defendant's total offense level was calculated based upon the amount of crack cocaine involved in the Defendant's offense conduct. The PSR

described in detail the Defendant's criminal history, and it calculated his criminal history score and noted his criminal history category. The Defendant has shown no error in the calculation of the guideline range that sentencing counsel failed to address.

The fact that a court imposes a sentence at the high end of the guideline range does not establish a performance failure by counsel. Even if defense counsel could have argued more, that is not the performance standard under *Strickland*. *See Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) ("To demonstrate deficient performance, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. This means identifying acts or omissions of counsel that could not be the result of professional judgment. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom. Our review of the attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."). Additionally, defense counsel's performance was not deficient for failing to make an argument based upon the sentencing disparity between crack and powder cocaine because such an argument was unwarranted at the time under Seventh Circuit precedent. *See United States v. Brodie*, 507 F.3d 527, 532 (7th Cir. 2007) (stating that "it is impossible for us to see how the trial court's use of the guidelines ratio could conceivably be plain error when we have held that it would be reversible error for the court to have ignored it and substituted a different ratio") (citing cases).

Even if the Court were to find that counsel's performance during sentencing was

deficient, which it does not find, the Court finds that the Defendant has failed to show that, but for any such deficient performance, the result of the sentencing would have been different. The nature and circumstances of the offense conduct, the Defendant's history and characteristics, and the purposes of punishment warranted a sentence on Counts 1 and 2 at the high end of the guideline range, and the seven-year consecutive sentence on Count 3 was mandated by statute.

**B.      The Defendant's Judicial Notice Claim Filing [ECF No. 182]**

In his filing captioned "Judicial Notice Claim for Sentence Reduction Due to Split in Circuits," the Defendant asks the Court to consider the cases of *United States v. Whitley*, 529 F.3d 150 (2d Cir. 2008), and *United States v. Almany,* 598 F.3d 238  (6th Cir. 2010), and to resentence him. In his submission, the Defendant sets forth the terms of imprisonment that he was originally sentenced to serve, but the Defendant fails to acknowledge that the Court has already reduced his sentence pursuant to 18 U.S.C. § 3582(c)(2) based upon the 2007 amendments to Sentencing Guideline § 2D1.1. Additionally, it is unclear what procedural vehicle the Defendant intends to use with this filing. It appears that he wants the Court to take notice of certain judicial opinions and that he is seeking relief from his consecutive sentences claiming that he is exempt from the mandatory minimum sentence on the gun count because he is subject to another greater mandatory minimum sentence.

In *United States v. Almany*, 131 S. Ct. 637 (2010), the Supreme Court granted certiorari, vacated the underlying judgment, and remanded the case to the Sixth Circuit for further consideration in light of *Abbott v. United States*, 131 S. Ct. 18 (2010), in which the Supreme Court held that defendants are subject to mandatory, consecutive sentences pursuant to 18 U.S.C.

§ 924(c) despite higher minimum sentences for separate counts of conviction. *Abbott*, 131 S. Ct. at 23. Additionally, even before the Supreme Court ruled in *Abbott*, the Seventh Circuit had rejected the interpretation of 18 U.S.C. § 924(c)(1)(A) that the Defendant favors based upon the cases he cites out of the Second and Sixth Circuits. *See United States v. Boyd*, 608 F.3d 331, 332–33 (7th Cir. 2010) (reaffirming *Unites States v. Easter*, 553 F.3d 519, 526 (7th Cir. 2009) (holding that the "except" clause in § 924(c)(1)(A) applies only to minimum sentences for a § 924(c)(1) offense and not to minimum sentences for other counts of conviction)). Considering Supreme Court and Seventh Circuit precedent, the Defendant's request for resentencing fails. Accordingly, the Court will deny the Defendant's Judicial Notice Claim for Sentencing Reduction.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Where, as here, the district court has rejected the constitutional claim on the merits, "the showing required to satisfy §

2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. A defendant is not required to show that he will ultimately succeed on appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate").

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court declines to issue a certificate of appealability. The Defendant has not made the requisite showing in these circumstances.

## CONCLUSION

Based on the foregoing, the Court DENIES the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 146] and his Judicial Notice Claim for Sentence Reduction [ECF No. 182]. Additionally, the Court DECLINES to issue a certificate of appealability.

SO ORDERED on July 20, 2011.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT